UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

In Re DMCA Subpoena to Facebook, Inc.

Case No. 7:18-mc-00471-CS

Honorable Cathy Seibel

---

# WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S REPLY TO FACEBOOK, INC.'S OPPOSITION TO MOTION FOR CONTEMPT

## PRELIMINARY STATEMENT

Despite acknowledging that it received the DMCA subpoena in addition to multiple requests to meet and confer, Facebook, Inc. ("Facebook"), a sophisticated litigant with a Law Enforcement Response Team and system[1] specifically designed for the submission, tracking, and processing of subpoenas attempts to persuade this Court that it was not able to: 1) manage serving its objections on Watch Tower Bible and Tract Society of Pennsylvania ("Watch Tower"), and 2) avoid 'missing' several opportunities to meet and confer with Watch Tower about the subpoena. Facebook's opposition brief, on the other hand, uncovers the true story of Facebook's lack of earnest effort to comply with the subpoena and its complete disregard for the judicial process.

After properly serving Facebook with a valid subpoena over four months ago in addition to three separate requests to meet and confer, it took an Order to Show Cause plus an additional 11 days for Watch Tower to finally receive a call from Facebook. If Facebook were a mom-and-pop shop with limited resources and no access to legal counsel, one might excuse Facebook's

---

[1] *See* Facebook Safety Center, Information for Law Enforcement Authorities, https://www.facebook.com/safety/groups/law/guidelines/ (last visited Feb. 25, 2019).

snail-paced response effort.  Facebook, however, is a billion-dollar internet-based behemoth with a legal department, a Law Enforcement Response Team dedicated to subpoena processing, and no lack of resources.  What is more, Facebook is an internet-service provider subject to the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. §512).

Facebook's feigned compliance with the DMCA's requirement to "expeditiously" disclose the identities of infringers to copyright owners coupled with its glacial pace in responding to Watch Tower's good faith attempts to meet and confer evinces disregard for its statutory obligations and the judicial process.  Facebook should be held in contempt.

### STATEMENT OF FACTS

Contrary to Facebook's claim that its registered agent in New York received the Subpoena on November 6, 2018, the subpoena was served on Facebook's registered agent in New York on October 24, 2018.  *See* Polidoro Decl.¶ 4 & Comp. Ex. B at 2.

Watch Tower never consented to electronic service of Facebook's objection to the subpoena. *See* Jean-Noel Decl. at ¶ 2.  Facebook knew or could have known Mr. Polidoro's correct email address because it previously complied with no less than three other Watch Tower DMCA subpoenas via email to Mr. Polidoro at his '**jw.org**' email address**.**  *See id.* at ¶ 9.

Ms. Jean-Noel never received Facebook's objection letter and Facebook provides no further proof of mailing.  *See* Jean-Noel Decl. at ¶ 3.

In addition to the three requests to meet and confer, Watch Tower also sent Facebook a copy of Watch Tower's request to this Court for a pre-motion conference on January 24, 2019.  *See* Jean-Noel Decl. at ¶ 5 & Jean-Noel Decl. Comp Ex. 2.  Facebook never responded to the Court or Watch Tower.  *Id.*  Per the Court's order, on January 31, 2019 Watch Tower served the Order to Show Cause on Facebook via its registered agent in New York and also emailed the

Order to Facebook at the email address: subpoena@facebook.com. *See* [D.E. 14.], Jean-Noel Decl. at ¶ 6.

When Facebook's counsel called Ms. Jean-Noel on February 11, 2019, he indicated that Facebook needed an additional URL to the cover page of the infringing account. *See* Jean-Noel Decl. at ¶ 8. The requested URL had already been provided to Facebook in the DMCA infringement notice forming the basis for the DMCA subpoena. *See* [D.E. 3], Exhibit 1. Ms. Jean-Noel indicated to Mr. Roche that Watch Tower could not unilaterally issue an amended subpoena because DMCA subpoenas are approved by the Court and issued by the Clerk of Court. *See* Jean-Noel Decl. at ¶ 8. Mr. Roche requested that Ms. Jean-Noel simply write the additional URL on the original subpoena and email it to him. *Id.* Ms. Jean-Noel complied with Mr. Roche's request. *Id.*

## ARGUMENT

**I. Facebook's excuses for its failure to respond or comply with the subpoena are inadequate and fraught with inconsistencies.**

*A.     Facebook did not properly serve its objections on Watch Tower.*

Facebook's entire claim to adequate excuse for its failure to respond to the subpoena hangs on a never-seen-email purportedly sent to Mr. Polidoro at a wrong email address. Yet, Facebook's attempt to email its objections to Mr. Polidoro is of little import because service of the objection letter by email, even if successful, would have been improper. Fed. R. Civ. Proc. 5(b)(2)(E) states,

> A paper is served under this rule by: . . . (E) sending it by electronic means ***if the person consented in writing*** – in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served.

(emphasis added). Watch Tower never consented to electronic service of Facebook's objections. Thus, Facebook never properly served an objection to the subpoena.

Facebook had to have known that Watch Tower never received the objections because

3

counsel for Watch Tower said as much in the three subsequent letters sent to Facebook about the subpoena. Polidoro Decl. at ¶¶5-6. What is more, the return date on the subpoena was November 30, 2018. Thus, when Facebook claims that it finally sent the objections to Ms. Jean-Noel by mail on January 11, 2019, it had to have known that any objections had already been waived.

> *B. Facebook's feigned inability to comply with the subpoena is baseless.*

A close review of Facebook's objection letter reveals that prior to Mr. Roche's February 11th call to Ms. Jean-Noel, Facebook never indicated that it was unable to identify the account at issue in the subpoena. The only two mentions of identification of an account by URL or email address in the objection letter were general comments that in no way indicated a deficiency in Watch Tower's DMCA subpoena or an inability to locate the relevant account. The letter stated,

> If you are seeking non-content basic subscriber information associated with a user account, . . . and your subpoena uniquely identifies an account by URL or email address, Facebook may produce reasonably available basic subscriber information . . . .

and "Please ensure that you have identified a unique user account by URL or email address and that your request is appropriately date and field limited." *See* Roche Decl. Ex. 2. Neither of these statements conveys the idea that Facebook was unable to comply with the subpoena because it needed more information. Furthermore, contrary to Facebook's insinuation that Watch Tower's subpoena lacked URLs identifying the user's account, the subpoena included three URLs linking directly to the account at issue. *See* Jean-Noel Decl. at ¶ 7 & Ex. 5.

In so far as Facebook genuinely needed an additional link to the user's account, with a little good-faith effort, Facebook could have located that additional link to the user's account cover page on the court's docket or in its own records. Indeed the court docket includes the underlying DMCA notice forming the basis of the subpoena. D.E. 3 at Ex. 1. Notably,

Facebook had no trouble locating the infringing account when it responded to the underlying DMCA notice. *See* Jean-Noel Decl. at ¶ 7 & Ex. 6.

    *C. Facebook employed deliberate dilatory tactics to escape its statutory obligations.*

Facebook received the Order to Show Cause on January 31, 2019. *See* Jean-Noel Decl. at ¶ 6. While acknowledging receipt of the subpoena the same day at 12:30 p.m. (PST), Facebook made no further attempt to contact Watch Tower until 11 days later. *Id.* If the real issue was that Facebook was unable to identify the relevant user, Facebook could have *promptly* reached out to Watch Tower on January 31st. Had it done so, Watch Tower could have extended the same courtesy to Facebook that it requested 11 days later by way of its counsel, Mr. Roche. Then, Facebook could have provided the user its typical 21-day notice *and* complied with the subpoena on February 21st rather than wasting judicial resources on an unnecessary opposition motion.

The fact of the matter is that Facebook's Law Enforcement Response Team did not make an earnest effort to respond to the subpoena. Now Facebook seeks to shift the blame for its mismanagement of the subpoena to Watch Tower in an attempt to find an adequate excuse for its inexcusable conduct.

**II.    Facebook's Dilatory Tactics Warrant an Order of Contempt.**

When taken into context, it is evident that Facebook's tactical delays warrant an order of contempt. All of the cases cited by Facebook deciding against an order of contempt are inapposite.

In *Kerr* v. *Thomas*, 14 Civ. 9168 (KBF)(HBP), 2017 WL 485041, *11 (S.D.N.Y. Feb. 3, 2017) the Court's holding was largely based on the fact that "plaintiff failed to provide proof that any of the subpoenas were ever actually served". Indeed, the Court ultimately concluded that service of the subpoenas in that case was "insufficient". *Id.* The same cannot be said of Watch Tower's DMCA subpoena in the present case. Moreover, the alleged contemnor in *Kerr* was an

5

individual – not a billion-dollar business with a Law Enforcement Response Team dedicated to responding to subpoenas.

Facebook's reliance on the Eastern District of New York court's decision in *New Falls Corp.* v. *Soni*, CV 16-6805 (ADS)(AKT), 2017 WL 9732100 (E.D.N.Y. Oct. 30, 2017) is equally unavailing. In so far as the Court can be persuaded by the *New Falls* decision, the Plaintiff in that case had not received the Court's permission to file a motion for contempt. *Id.* at *1-2. The Court in that case specifically only "permitted leave to make a motion to enforce the subpoena . . . ." *See id.* Furthermore, the *New Falls* court explained that the reason why a motion for contempt was not appropriate in that case was because the Plaintiff had not yet "demonstrate[ed] that the information sought [wa]s relevant and material to the allegations and claims at issue in the proceedings." *Id.* at *4-5 quoting *Crosby* v. *City of New York*, 269 F.R.D 267, 282 (S.D.N.Y 2010).

Similarly, the decisions in *In re Application of the Kingdom of Morocco*, Misc. Case M8-85, 2009 WL 1059786 (S.D.N.Y. Apr. 16, 2009) and *Sterling Nat'l Bank* v. *A-1 Hotels Int'l*, 00 Civ. 7352 (GEL), 2004 WL 1418201 (S.D.N.Y June 23, 2004) are distinguishable because neither of those cases contemplated DMCA subpoenas. Like the *New Falls* case, those cases required no prior judicial involvement in issuing the subpoenas. The Plaintiffs in those cases had not yet demonstrated that the subpoenaed information sought was relevant to the proceedings. Watch Tower, on the other hand, already demonstrated the relevance of the information sought in the subpoena in its application to the Court for the subpoena. More importantly, this Court found "good reason to issue an order directing the clerk to issue [the] subpoena" to Facebook. [D.E. 6]. Most importantly, Facebook, unlike the alleged contemnors in *New Falls, Kingdom of Morocco* and *Sterling Nat'l Bank*, has a statutory obligation to comply with the subpoena

"notwithstanding any other provision of law . . . ." 17 U.S.C. § 512(h)(5). Thus, all of the cases cited by Facebook provide no relevant guidance for the present matter.

**III. Facebook's footnote objection to this Court's exercise of jurisdiction is meritless.**

While Facebook cites its main supporting case for this proposition as "*Gucci America, Inc.* v. *Weixing Li*", the actual case caption reveals an important distinguishing detail. The decision in *Gucci America, Inc.* v. *Bank of China*, 768 F. 3d 122 (2d. Cir. 2014) exposes significant differences between Facebook and Bank of China. First, Bank of China was: 1) a Chinese company, 2) "owned ***in major part*** by the Chinese government", 3) with "10,145 domestic branches, 689 overseas branches and subsidiaries in 27 countries . . ., 1200 correspondent banks", and only two small branches in New York. *Id.* at 126 (emphasis added). Second, compelling compliance with the subpoena at issue in that case would have required a search of records held in the bank's China-based offices. *Id.* at 127. Third,

> Chinese banking regulators informed the district court that China's laws prohibit commercial banks from . . . turning over account records pursuant to foreign court orders, that the Bank's [previous] document production . . . violated those laws, and that the Chinese regulators . . . were evaluating appropriate sanctions.

*Id.* at 128. Lastly, the Court's decision in that case largely turned on the "risks to international comity" that would arise from exercising personal jurisdiction over Bank of China. *Id.* at 135.

No such issues exist in the present case. Facebook is not owned by a sovereign nation. The ratio of Facebook's offices in New York to its offices in California is not 2 to 10,145. *See Mirror Worlds Tech., LLC* v. *Facebook, Inc.*, 17-cv-3473 (JGK), 2017 WL 5634127, *4 (S.D.N.Y. Nov. 20, 2017)(noting "Facebook has at least one New York City Office" and denying Facebook's motion to change venue, in part, because "[i]t would not be a significant inconvenience to . . . transmit the relevant evidence electronically to this or any District."). Facebook will not face sanctions as result of complying with the subpoena. To the contrary,

federal law requires Facebook's compliance with the subpoena. Finally, contrary to Facebook's suggestion, New York's Long-Arm Statute has not been outlawed and Facebook is subject to this Court's jurisdiction. *See* CPLR § 302(a).

**CONCLUSION**

If Facebook was an unsophisticated non-party without the benefit of in-house counsel, substantial financial resources, and a Law Enforcement Response Team dedicated to handling subpoenas, Facebook's conduct might be excusable. The simple fact here is that Facebook gave little consideration to this DMCA subpoena and its own statutory obligation to "*expeditiously* disclose to the copyright owner . . . the information required by the subpoena, notwithstanding any other provision of law. . . ." 17 U.S.C. § 512(h)(5). Facebook's conduct was contumacious.

Watch Tower, on the other hand, made every effort to be reasonable with Facebook and avoid seeking court intervention. First, Watch Tower served a subpoena that provided over 30-days for Facebook to comply. When Facebook failed to comply or respond to the subpoena, Watch Tower reached out to Facebook on three separate occasions to resolve the matter. Facebook claims that it only received the last two letters despite the fact that Watch Tower provides confirmation that its December 3rd letter was delivered at Facebook's office. *See* Jean-Noel Decl., Ex. 1. Still, even if the first letter that Facebook received was the December 27th letter, it took over two weeks and an additional letter threatening to seek court intervention before Facebook would *purportedly* send Ms. Jean-Noel – *not* a response to Watch Tower's request to meet and confer – but a copy of Facebook's original objection letter.

To make matters worse, on January 24, 2019 Watch Tower also sent Facebook a copy of its pre-motion letter to the Court, but Facebook still refused to contact Watch Tower. Facebook made no good faith effort to discuss the subpoena with Watch Tower until February 11, 2019 –

11 days after it received the Order to Show Cause. It should not take an Order to Show Cause to get a good faith response from Facebook on any subpoena, much less a DMCA subpoena for which statutory law requires expeditious compliance. Facebook's conduct borders on bad faith and it should be held in contempt, directed to immediately comply with the subpoena, and be sanctioned in an amount to be determined by the Court for each day that it fails to comply with subpoena. Notwithstanding the sanctions and order of contempt warranted by Facebook's conduct, Watch Tower is amenable to adjourning the Order to Show Cause hearing for one week to allow Facebook yet another opportunity to comply with the subpoena.

Dated: February 25, 2019

Patterson, New York

Respectfully submitted,

WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA
Legal Department
100 Watchtower Drive
Patterson, NY 12563
Telephone: 845-306-1000
Facsimile: 845-306-0709

/s/ Paul D. Polidoro
Paul D. Polidoro
Associate General Counsel
SDNY Bar No. PP2509

*Attorney for Plaintiff*